# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TALCOTT COMMUNICATIONS CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17 C 2278 |
| | ) |
| QUAD/GRAPHICS PRINTING CORP., also | ) |
| known as QUAD GRAPHICS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2009, Talcott Communications Corp. signed a contract with Quebecor, later acquired by Quad/Graphics Printing Corp., to print the magazines Talcott publishes. Between 2009 and 2011, Talcott accrued a balance of past-due invoices. In 2014, after repeated printing delays on Quad/Graphics' part, Talcott's frustration came to a boil as it began to lose advertisers because of the delays. The parties' relationship came to an end, and Talcott later sued Quad/Graphics for breach of contract. Quad/Graphics counterclaimed, alleging that Talcott was in breach for failing to pay its invoices in timely fashion. Quad/Graphics has moved for summary judgment on Talcott's claim and its counterclaim.

## Background

Talcott is an Illinois corporation that publishes trade magazines, including *Giftware News*, *Fancy Food Magazine*, *Baby Magazine*, and *Chef Educator.* It publishes tens of thousands of its magazines each year. In 2009, it entered into a

printing contract with Quebecor. Quebecor was reorganized as World Color Press, which Quad/Graphics subsequently acquired.

Between 2009 and 2011, Talcott did not pay several invoices. On December 18, 2011, it entered into an amended agreement with Quad/Graphics. The agreement laid out an approach to remedy Talcott's outstanding balance. For future printings, Talcott was required to pay 130 percent of the cost before the publication went to print, and the payment would be applied to its oldest invoices first.

In July 2014, Quad/Graphics moved Talcott's projects to a new printing plant. Problems arose almost immediately. The record contains numerous e-mails between September and November 2014 in which Talcott employees complain about delays in printing the magazines. For Talcott, the final straw was the loss of the advertisers who had grown frustrated with the late publication of the magazines in which their ads were placed. In 2017, Talcott sued Quad/Graphics for breach of contract. Quad/Graphics counterclaimed that Talcott breached by failing to pay its outstanding balance.

**Discussion**

Quad/Graphics has moved for summary judgment on Talcott's breach of contract claim, as well as its breach of contract counterclaim against Talcott. The contract between Quad/Graphics and Talcott requires that New York law governs their dispute. Def.'s Ex. A ¶ 29 (Printing Agreement). "The essential elements to pleading a breach of contract under New York law are the making of an agreement, performance by the plaintiff, breach by the defendant, and damages suffered by the plaintiff." *Startech, Inc. v. VSA Arts*, 126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000). To prevail on a motion for summary judgment, Quad/Graphics must establish that no reasonable jury could find in

2

Talcott's favor, even after the Court views all evidence and takes all reasonable inferences in Talcott's favor. *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

The first element of the breach of contract analysis is common to both Talcott's claim and Quad/Graphics' counterclaim: whether an agreement existed between the parties. The answer here is clearly yes. The parties have presented a written contract, Def.'s Ex. A (Printing Agreement), and a subsequent amendment. Def.'s Ex. B (Amended Agreement). Moreover, both parties have acknowledged in their pleadings the existence of a "valid and enforceable" contract. *See* Answer ¶ 9 (admitting that "[t]he Contract and Amendment between TALCOTT and QUAD GRAPHICS was valid and enforceable at all times relevant to this Complaint.").

The Court reviews the remaining questions of each claim—performance, breach, and damages—separately. *Startech*, 126 F. Supp. 2d at 236. The Court first considers Talcott's breach of contract claim, then reviews Quad/Graphics' counterclaim.

## I. Talcott's breach of contract claim

Talcott alleges that Quad/Graphics breached its contract by repeatedly delivering printing orders late, which caused Talcott's advertisers to flee. To prevail on its breach of contract claim, Talcott must show that (1) it performed under the contract, (2) Quad/Graphics breached, and (3) it suffered damages. *Id.* To obtain summary judgment, Quad/Graphics must show that no jury could reasonably find in Talcott's favor on these elements. *Blasius*, 839 F.3d at 644. Quad/Graphic focuses its argument on two elements. First, it argues that no reasonable jury could find that it breached the contract. Def.'s Mem. in Supp. of Summ. J. at 10. Second, Quad/Graphic contends

that no reasonable jury could conclude that Talcott is entitled to damages. *Id.* at 8. The Court does not address Quad/Graphic's first argument, as it finds that Quad/Graphics is entitled to summary judgment on the basis of the second point.

Quad/Graphics argues it is entitled to summary judgment because Talcott cannot recover its proposed damages—losses in advertising revenue—as it disclaimed consequential damages in the contract. *Id.* at 8-11. The contract states that Quad/Graphics shall not be liable for "special, incidental or consequential damages," including "lost profits." Def.'s Ex. A ¶ 15 (Printing Agreement). Talcott, in response, argues that the damage waiver is unconscionable and, therefore, unenforceable. Pl.'s Resp. Br. at 6. Quad/Graphics responds that Talcott, through its complaint, conceded the enforceability of the waiver. Def.'s Reply Br. at 4. Quad/Graphics also argues that the contract, an agreement between two sophisticated corporations, is not unconscionable. *Id.* at 5. The Court need not resolve the first contention, as Quad/Graphics prevails on the second.

Quad/Graphics argues that no reasonable jury would conclude that its contract with Talcott is unconscionable. An unconscionable contract is unenforceable. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 828 (1988). To show the contract is unconscionable under New York law, Talcott must show the contract was procedurally unconscionable, "which requires some showing of an absence of meaningful choice on the part of one of the parties," and that it was substantively unconscionable, which requires showing "contract terms which are unreasonably favorable to the other party." *Id.* (internal quotation marks and citations omitted).

4

Did Talcott lack "meaningful choice" when it contracted away its right to consequential damages? *Id.* To analyze whether the contract is procedurally unconscionable, "[t]he focus is on such matters as the size and commercial setting of the transaction . . . , whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* at 11, 534 N.E.2d at 828. Talcott entered into the agreement waiving consequential damages with Quebecor—not Quad/Graphics—in 2009, and it has presented no evidence suggesting that Quebecor engaged in anything untoward during negotiations. Talcott tries to skirt this issue by focusing on the negotiation between Quad/Graphics and Talcott after Quad/Graphics acquired World Color, the reorganized Quebecor entity. Pl.'s Resp. Br. at 8-9. Talcott characterizes itself as vastly outgunned by Quad/Graphics, given the disparity in size between the firms and Talcott's existing debt to Quebecor. *Id.* Quad/Graphics rightly points out that Talcott is a sophisticated business that publishes numerous magazines across the country, and that Talcott failed to show Quad/Graphics employed any coercive negotiating tactics. Def.'s Reply Br. at 6. Nor has Talcott cited any case in which a court invalidated a contract between two business entities as procedurally unconscionable on the ground that it was negotiated while one entity was indebted to another.

Talcott unsuccessfully tries to analogize its position to the position of the plaintiff in *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002). In *Brennan*, the court struck down an arbitration agreement that an employer foisted upon an employee after she alleged her supervisor sexually harassed her. *Id.* The *Brennan* plaintiff was a

5

single mother who, while in the midst of a high-risk pregnancy, depended on her employer for her health insurance. *Id.* at 383. She believed she would be fired if she did not sign the sixteen-page, single-spaced arbitration agreement immediately. *Id.* Talcott is not the least bit similar to the plaintiff in *Brennan*. It has not offered *any* evidence that Quad/Graphics engaged in high-pressure tactics, and certainly nothing approaching the conduct the plaintiff in *Brennan* suffered. Def.'s Reply Br. at 5. *Brennan* affords Talcott no help.

Talcott also argues that the contract was procedurally unconscionable because it was a contract of adhesion. Pl.'s Resp. Br. at 9. "Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) (citations omitted). *See also App. of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 351 (S.D.N.Y. 2014) ("[A] 'contract of adhesion' is one that contains terms that are unfair and nonnegotiable and arises from a disparity of bargaining power or oppressive tactics.") (internal quotation marks and citations omitted). For reasons already discussed, Talcott has not shown that there was a disparity between the parties that warped negotiations, nor has it offered any evidence that Quad/Graphics employed oppressive tactics. In sum, there is no evidence to support the proposition that the contract was procedurally unconscionable.

The next issue is whether the contract was substantively unconscionable, which depends on whether its terms were "unreasonably favorable" to Quad/Graphics. *Gillman*, 73 N.Y.2d at 10, 534 N.E.2d at 828. An unconscionable contract is one which,

6

"in light of the mores and business practices of the time and place" is so "grossly unreasonable" that it cannot be enforced. *Id.* Talcott argues that the consequential damage waiver unreasonably favors Quad/Graphics, because it "gives Quad/Graphics a free pass to intentionally breach the contract without any serious repercussions and without any remedies to make the customer whole again." Pl.'s Resp. Br. at 10. This is untrue: the contract expressly permits compensatory damages. Def.'s Ex. A ¶ 15 (Printing Agreement). New York courts regularly affirm contract terms that waive consequential damages. *See, e.g., Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, No. 13 Civ. 5193 (SAS), 2014 WL 6790762, *7 (S.D.N.Y. Dec. 2, 2014) (holding that a clause between a publisher and a printer that waived consequential damages was enforceable, as "[b]oth parties are sophisticated entities operating in a commercial environment."). *See also Daily News, L.P. v. Rockwell Int'l Corp.*, 256 A.D.2d 13, 13, 680 N.Y.S.2d 510, 510 (1998) (upholding a contract that "expressly excludes as a remedy the recovery of consequential damages"). In sum, there is no evidence to support the proposition that Talcott's contract was procedurally or substantively unconscionable.

For these reasons, Quad/Graphics is entitled to summary judgment on Talcott's breach of contract claim.

## II. Quad/Graphics' breach of contract counterclaim

Quad/Graphics also seeks summary judgment on its breach of contract counterclaim. A motion for summary judgment should be granted if only "no jury could reasonably find in the nonmoving party's favor." *Blasius*, 839 F.3d at 644. Thus to prevail on its motion for summary judgment, Quad/Graphics must establish that no

reasonable jury could find against it on the following propositions: (1) it performed under the contract, (2) Talcott breached, and (3) it suffered damages. *Startech*, 126 F. Supp. 2d at 236.

The first issue is whether a reasonable jury could find that Quad/Graphics did not perform under the contract. Under New York law, "one of the essential elements of a cause of action for breach of contract is the performance of its obligations by the party asserting the cause of action for breach." *County of Jefferson v. Onondaga Dev., LLC*, 151 A.D.3d 1793, 1795-96, 59 N.Y.S.3d 203, 206 (2017). Quad/Graphics argues that, because it never received written notice of a breach as required by the contract, it fully performed under the contract. Def.'s Mem. in Supp. of Summ. J. at 13. Talcott disputes this argument, pointing to the fact that Quad/Graphics delivered its magazines well past the deadline on several occasions, and refused outright to print the November 2014 issue of *Giftware News*. Pl.'s Resp. Br. at 13-14.

Quad/Graphics' argument is unconvincing. "[A] party who seeks to recover damages from the other party to the contract must show that he himself is free from fault in respect of performance." *Onondaga Dev.*, 151 A.D.3d at 1795, 59 N.Y.S.3d at 206 (citation omitted). Talcott has presented a good deal of evidence suggesting that Quad/Graphics' record of performance was not free from fault. Quad/Graphics began to miss publishing deadlines once it began printing Talcott's magazines at a new plant. Von Rabenau Aff. ¶ 22. In September 2014, a Talcott employee e-mailed Quad/Graphics with concerns about "[p]roblems at the new plant." Pl.'s Ex. B (Sept. 9, 2014 e-mail). In October, a Quad/Graphics employee e-mailed to "apologize" for the "lag in service" that Talcott suffered. Pl.'s Ex. H (Oct. 8, 2014 e-mail). Affidavits from

Talcott's employees describe numerous delays in printing. *See, e.g.,* Mowrey Aff. ¶ 25 ("On October 9, 2014, I received an e-mail from Mark Czech wherein he informed me that Quad/Graphics was trying to cure the late printing and shipping of *Giftware News* that I made him aware of on October 8, 2014."). Likewise, whether Quad/Graphics' decision not to print the November 2014 issue of *Giftware News* was a breach remains an issue on which reasonable jurors could disagree. *See* Pl.'s Resp. Br at 14; Def.'s Reply Br. at 4. Talcott's claimed failure to give sufficient written notice of a breach might be a factor for a jury to consider in deciding whether Quad/Graphics performed, but it is not dispositive on an affirmative claim by Quad/Graphics. Quad/Graphics is therefore not entitled to summary judgment on its counterclaim.

The second issue is whether a reasonable jury could find that Talcott did not breach the contract. Under the 2011 amendment, Talcott agreed to pay 130 percent of the cost of any future order. Talcott also agreed that each payment would be applied to its oldest outstanding invoice. Def.'s Ex. B at 22 (Agreement Amendment). Quad/Graphics contends that Talcott breached the contract by failing to pay the remaining invoices. Def.'s Mem. in Supp. of Summ. J. at 13-14.

Quad/Graphics has not sufficiently shown how Talcott's unpaid invoices breached the contract. After the 2011 amendment was adopted, Talcott relied on the amendment by pre-paying its invoices at 130 percent of the actual cost, and Quad/Graphics has not offered evidence suggesting that Talcott has failed to make any payments under the amended contract. Per the terms of the amended contract, Talcott's most recent invoices remain unpaid—but only because its oldest invoices were paid off first. Quad/Graphics has failed to show that the issue of a breach by Talcott

can be determined by the Court as a matter of law, at least not based on the record presented in connection with the motion for summary judgment. The Court therefore denies Quad/Graphics' motion for summary judgment on its counterclaim. For this reason, the Court does not need to address the arguments regarding Quad/Graphics' damages, including arguments about interest and attorneys' fees. *See* Def.'s Mem. in Supp. of Summ. J. at 14; Pl.'s Resp. Br. at 15; Def.'s Reply Br. at 3.

**Conclusion**

For the foregoing reasons, the Court grants summary judgment in favor of Quad/Graphics on Talcott's claim, but denies Quad/Graphics' motion with respect to its counterclaim [dkt. no. 21]. The case is set for a status hearing on February 28, 2018 at 9:00 a.m. for the purpose of setting a trial date on the counterclaim and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 15, 2018